# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL R. LITTLE, | : | |
| Plaintiff | : | |
| | : | No. 1:17-cv-01915 |
| v. | : | |
| | : | (Judge Kane) |
| WARDEN D. EBBERT, | : | |
| Defendant | : | |

## MEMORANDUM

Before the Court for consideration are the following motions filed by pro se Plaintiff Michael R. Little ("Plaintiff"), in this closed case: (1) motion for an extension of time to comply with this Court's May 18, 2018 Order (Doc. No. 9); (2) motion to reopen this action (Doc. No. 10); and (3) motion for leave to proceed in forma pauperis (Doc. No. 11). For the reasons that follow, the Court will grant Plaintiff's motion for an extension of time, deem Plaintiff's motion for leave to proceed in forma pauperis timely filed, direct the Clerk of Court to reopen this action, and pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] perform a mandatory screening of the complaint.

## I.    BACKGROUND

Plaintiff initiated this Bivens[2] action pursuant to 28 U.S.C. § 1331, by filing a complaint on October 20, 2017 and naming as Defendants Warden D. Ebbert, Doctor K. Pigos, F. Alama, F. Fasciania, and Ms. Warner of the United States Penitentiary, Lewisburg, Pennsylvania ("USP-Lewisburg"), the facility where Plaintiff was formerly confined. (Doc. No. 1.) Plaintiff alleges a deliberate indifference claim against Warden Ebbert for his failure to install a ladder to Plaintiff's top bunk. (Id. at 2.) Plaintiff claims that on February 18, 2016, he fell from his top

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).
[2] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

bunk when trying to descend, resulting in a facial injury that required stitches, a sore back, a left knee injury, dizzy spells, and blackouts. (Id.)

Plaintiff also alleges that in May 2014, he saw Dr. Pigos and requested that he issue Plaintiff a bottom bunk pass because of a deteriorated dislocated disk in his back, which was allegedly documented in Plaintiff's medical file. (Id. at 3.) Plaintiff claims that Dr. Pigos was deliberately indifferent to his medical needs by failing to issue him a bottom bunk pass resulting in Plaintiff falling from the top bunk and further injuring himself on February 18, 2016. (Id.)

Next, Plaintiff claims that he provided Defendant Fasciana, a member of the medical staff, sick call slips requesting a bottom bunk pass due to his back injuries. (Id.) However, Plaintiff speculates that because he was never medically seen for this specific issue, he believes that Fasciana destroyed his sick call slips. (Id.) Plaintiff also alleges that Defendant Warner failed to "log" all of Plaintiff's injuries he sustained on February 18, 2016, when he fell from his top bunk. (Id. at 4.) Additionally, Plaintiff claims that Defendant Warner told Defendant Alama not to use regular stitches when treating Plaintiff's face wound, but rather, to use glue stitches. (Id.) Plaintiff maintains that Defendant Alama used glue stitches rather than regular stitches on his face and also refused to give Plaintiff a temporary bottom bunk pass. (Id.)

Lastly, Plaintiff alleges that he was double-celled in a cell that was only meant for one inmate. (Id. at 5.) Plaintiff claims that he has suffered emotional injuries as a result of being double-celled. (Id.) Plaintiff also attributes his February 18, 2016 fall from his top bunk to being double-celled. (Id.) Plaintiff seeks $50,000 in damages. (Id. at 6.)

On December 6, 2017, the Court issued an Order closing this case given Plaintiff's failure to comply with a previous Administrative Order that required Plaintiff to either pay the statutory filing fee or submit an application to proceed in forma pauperis. (Doc. No. 6.) On May 18,

2018, the Court denied Plaintiff's first motion to reopen (Doc. No. 7), for Plaintiff's failure to either pay the statutory filing fee or submit an application to proceed in forma pauperis. (Doc. No. 8.) However, given Plaintiff's representations that the Clerk of Court inadvertently docketed Plaintiff's complaint with the wrong Bureau of Prison ("BOP") number and address, and he therefore never received any documents from the Court (Doc. No. 7), the Court advised Plaintiff that if he filed a renewed motion to reopen with the appropriate filing fee or application to proceed in forma pauperis, the Court would reopen this case. (Doc. No. 8.) On June 5, 2018, the Court received and docketed three motions from Plaintiff requesting an extension of time within which to comply with this Court's May 18, 2018 Order to submit his appropriate in forma pauperis application (Doc. No. 9), a request to reopen this case (Doc. No. 10), and a motion for leave to proceed in forma pauperis (Doc. No. 11).

## II.     LEGAL STANDARD

### A.     Motion to Reopen

A motion to reopen a case may be treated as a motion to reconsider under Federal Rule of Civil Procedure 59(e). See Paige v. Holt, No. 4:cv-10-0701, 2011 WL 13196621 (M.D. Pa. Apr. 18, 2011) (citing Choi v. Kim, 258 F. App'x 413 (3d Cir. 2007)). The scope of a motion under Rule 59(e) "is extremely limited." Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011). Its purpose is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering or amending a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café

v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

B. **Screening and Dismissal of Prisoner Complaints**

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. 28 U.S.C. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions. See 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted."); 42 U.S.C. § 1997e(c)(1) ("The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal

4

Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See Iqbal, 556 U.S. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be

held to "less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106) (internal quotation marks omitted)).

      **C.**     **Bivens Claims**

A Bivens civil rights action asserted under § 1331 is evaluated using the same standards applicable to a § 1983 civil rights action.  See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992).  To state a claim under Bivens, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law.  See Young v. Keohane, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

**III.**    **DISCUSSION**

      **A.**     **Motion to Reopen**

The Court construes Plaintiff's motion to reopen as a request that this Court reconsider its December 6, 2017 Administrative Order (Doc. No. 6), closing this case without prejudice for Plaintiff's failure to either pay the requisite statutory filing fee or submit an application to proceed in forma pauperis (Doc. No. 10).  Plaintiff maintains that he never received any of the Court's previous orders because the Clerk of Court input an incorrect BOP number and address for him.  (Id.)  Therefore, Plaintiff provides that he was unable to comply with this Court's Administrative Order (Doc. No. 4), because he never received it.  (Doc. No. 10.)

The Court concludes that it is appropriate to grant Plaintiff's motion to reopen this action.  It is apparent from the record that due to no fault of Plaintiff's, his BOP inmate number and address were initially incorrectly docketed, thereby preventing him from receiving any correspondence or orders from the Court.  Accordingly, Plaintiff's motion to reopen this action will be granted and the Court will perform its mandatory screening of the complaint pursuant to the PLRA.

B.     **Exhaustion**

The PLRA "mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit." See 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199 (2007). Section 1997e provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e.

The Supreme Court has explicitly provided that all prisoners must exhaust their administrative remedies as to any claim that arises in the prison setting, regardless of the kind of relief sought. See Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, the exhaustion of available administrative remedies is required before filing a civil rights action. See Perazzo v. Fisher, No. 11-1505, 2012 WL 1964419 (M.D. Pa. May 31, 2012) (citing 42 U.S.C. § 1997e(a)); Jones v. Lorady, No. 11-666, 2011 WL 2461982 (M.D. Pa. June 17, 2011) (dismissing prisoner complaint sua sponte for failure to exhaust administrative remedies prior to initiating federal action). "[I]t is beyond the power . . . of any [court] to excuse compliance with the exhaustion requirement" of § 1997e. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000); see also Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004).

While the exhaustion requirement is an affirmative defense that must be pleaded and proven by the defendants, and a prisoner need not allege that he has exhausted his administrative remedies, Jones, 549 U.S. at 216, the Court may sua sponte dismiss an action where the Plaintiff's failure to exhaust is clear on the face of the complaint. McPherson v. United States, 392 F. App'x 938 (3d Cir. 2010); Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002); see also

7

Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (affirming sua sponte dismissal where prisoner plaintiff conceded that he did not exhaust administrative remedies); Perazzo, 2012 WL 1964419, at *1 (dismissing case sua sponte for failure to exhaust administrative remedies where plaintiff indicated in the complaint that the grievance process was not complete but was at the "last stage").

Plaintiff provides that he "disavows the PLRA as beyond the delegated powers of Congress." (Doc. No. 1 at 1.) He also claims that there can be no exhaustion requirement imposed on inmates asserting constitutional claims. (Id.) Plaintiff does not provide any further information as to whether he has exhausted his administrative remedies. Consequently, as it is not apparent from the face of the complaint as to whether Plaintiff exhausted his administrative remedies, the Court will proceed with screening of the complaint.

### C. Ladder and Double-Celled Claims

Plaintiff claims that despite his written "remedy" that notified Warden Ebbert and prison staff of the need for a ladder to his top bunk, Warden Ebbert was deliberately indifferent for failing to provide Plaintiff with a ladder to his top bunk and for double-celling inmates. (Doc. No. 1.) The Court construes these claims as conditions of confinement claims pursuant to the Eighth Amendment's prohibition on cruel and unusual punishment. See Tindell v. City of Phila., No. 17-907, 2017 WL 3028598, at *2 (E.D. Pa. July 14, 2017). The Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials. U.S. CONST. amend. VIII; see also Farmer v. Brennan, 511 U.S. 825 (1994). The Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer, 511 U.S. at 832 (quoting Hudson v.

8

Palmer, 468 U.S. 517, 526-27 (1984)). To allege a viable Eighth Amendment claim based on the conditions of confinement, an inmate must allege (1) a deprivation that is "objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities," and the officials responsible for the challenged conditions must act with deliberate indifference to the prisoner's health or safety. Id. at 834, 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Plaintiff's claim based on the absence of a ladder from his top bunk fails because it does not give rise to a constitutional claim. See Tindell, 2017 WL 3028598, at *2 (stating that "[t]o the extent plaintiff is raising claims based on the absence of a ladder[] that could be used to descend from the top bunk beds . . . his claims fail. Courts faced with similar allegations have held that the absence of a ladder or other safety mechanism for the top bunk in a prison cell at most suggests negligence"); Vercusky v. Purdue, No. 3:15-cv-2461, 2016 WL 7330589, at *3 (M.D. Pa. Dec. 16, 2016) (providing that "Plaintiff's allegation that the prison Warden failed to install ladders for access to the top bunks in the SHU . . . does not amount to a cognizable constitutional violation"); Tutora v. Sweeney, No. 14-4458, 2014 WL 705986, at *2 (E.D. Pa. Dec. 15, 2014) ("[T]he absence of a ladder or railing from the top bunk does not create an objectively serious condition threatening inmate safety or reflect deliberate indifference on behalf of prison officials").

Similarly, Plaintiff's claim that double-celling at USP-Lewisburg is a per se violation of the Eighth Amendment fails to state a claim upon which relief may be granted. While the Eighth Amendment prohibition against cruel and unusual punishment "demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs,"

9

Mitchell v. Dodrill, 696 F. Supp. 2d 454, 466 (M.D. Pa. 2010), at the same time, the "Constitution 'does not mandate comfortable prisons.'" Farmer, 411 U.S. at 833 (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Rather, in order to establish an Eighth Amendment claim, a plaintiff must show that he has been deprived of "the minimal civilized measure of life's necessities." Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997) (quoting Young v. Quinlan, 960 F.2d 351, 361 (3d Cir. 1991)). This includes showing that the conditions of confinement pose "a substantial risk of serious harm" to an inmate's health or safety." Farmer, 511 U.S. at 834.

Based upon this standard, Courts in this District, in reviewing analagous claims, have held on numerous occasions that the "environmental conditions at the Lewisburg Penitentiary are not sufficiently severe, protracted, or harmful to constitute cruel and unusual punishment and rise to the level of a violation of the Eighth Amendment." Milhouse v. Samuals, No. 1:15-cv-1644, 2015 WL 5954604, at *6 (M.D. Pa. Oct. 13, 2015) (holding that based on settled case law, plaintiff's claims "premised on the idea that . . . double-celling practice is inherently unconstitutional fail as a matter of law"); see also Mitchell, 696 F. Supp. 2d at 468-69 (rejecting a claim by a Lewisburg SMU inmate that double-celling prisoners in this facility violated the Eighth Amendment); Harrison v. Bledsoe, No. 09-1600, 2010 WL 186804, at *5-6 (M.D. Pa. Jan. 13, 2010) (holding that plaintiff's allegations regarding the double-celled conditions of the SMU, even when combined with other alleged restrictions imposed on inmates in the SMU, "do not raise a plausible inference that the plaintiff was denied the minimal civilized measure of life's necessitates"); Hunter v. Bledsoe, No. 10-927, 2010 WL 3154963 (M.D. Pa. Aug. 9, 2010) (holding that a SMU inmate has no constitutional right to single-cell status). In light of this

settled case law, Plaintiff's claim that being double-celled at USP-Lewisburg fails as a matter of law.

Moreover, any claim advanced by Plaintiff relating to the handling/lack of handling of Plaintiff's grievances fails to set forth a constitutional claim. Inmates do not have a constitutional right to prison grievance procedures. Lions v. Wetzel, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015). The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, does not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) (not precedential) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (not precedential) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., No. 4:cv–06–1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that prison officials' failure to respond to inmate's grievance does not state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998) (table); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) (Supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not

enough to show that the defendant has the necessary personal involvement); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam) (mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action).

Consequently, any claim asserted by Plaintiff in an attempt to establish liability against Warden Ebbert based solely upon the substance of his respective responses, or lack thereof, to his grievances or administrative remedies does not support a constitutional due process claim. See Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for liability); Brooks, 167 F. App'x. at 925; Ramos, 2006 WL 2129148, at *3. Accordingly, the foregoing claims will be dismissed against Warden Ebbert, and he will be dismissed from this action.

**D. Stitches Claim**

Plaintiff alleges that when he fell from his top bunk, he injured his face requiring stitches. (Doc. No. 1 at 4.) Plaintiff claims that Defendants Warner and Alama were deliberately indifferent for using glue stitches to close his face wound rather than "hard stitches to close" his face wound. (Id.) Liberally interpreting Plaintiff's pleading, the Court construes this claim as alleging an Eighth Amendment violation.

As set forth above, the Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty. Corr. Facility, 318

F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) plaintiff's objectively serious medical needs. Farmer, 511 U.S. at 834, 837; Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842)). The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. Rouse, 182 F.3d at 197.

Because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."). If a dispute exists as to the adequacy of the received treatment, courts are reluctant to second guess the medical judgment of the attending physician. Caldwell v. Luzerne Cty. Corr. Facility Mgmt. Emp., 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) ("Courts will not second guess whether a particular course of treatment is adequate or proper."); Little v. Lycoming Cty., 912 F. Supp. 809, 815 (M.D. Pa.

13

1996), aff'd, 101 F.3d 691 (3d Cir. 1996). Therefore, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment that the inmate receives does not support a claim of deliberate indifference. See Pearson, 850 F.3d at 535; Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). The question is thus "whether the defendant has provided the plaintiff with some type of treatment, despite whether it is what plaintiff wants." Jacobs v. Lisiak, No. 15-00686, 2016 WL 344431, at *4 (M.D. Pa. Jan. 28, 2016); Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

In the case at bar, Plaintiff disagrees with the type of stitches used by Defendants Warner and Alama. (Doc. No. 1 at 4.) It appears that Plaintiff would have preferred "hard" stitches over the glue stitches used by Defendants. (Id.) However, Plaintiff's disagreement with the adequacy of his treatment does not form the basis of a deliberate indifference claim. See Pearson, 850 F.3d at 535 ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."); Caldwell, 732 F. Supp. 2d at 472 ("Courts will not second guess whether a particular course of treatment is adequate or proper."); Jacobs, 2016 WL 344431, at *4 (stating that the relevant inquiry is "whether the defendant has provided the plaintiff with some type of treatment, despite whether it is what plaintiff wants"). Accordingly, this claim will be dismissed.

E.     **Bottom Bunk Pass Claim**

Plaintiff's final claim against Defendants Doctor Pigos and Fasciana[3] is for their alleged deliberate indifference for their failure to provide him a bottom bunk pass. (Doc. No. 1 at 3-4.)

---

[3] While it appears that Plaintiff intends to name Defendants Warner and Alama as Defendants in this specific claim as well, it is apparent from his allegations that he requested a bottom bunk pass from Defendant Warner and Alama only after he had already fallen on February 18, 2016. (Doc. No. 1 at 4.) Consequently, Defendant Warner and Alama could not have been deliberately

14

Plaintiff alleges that despite his deteriorated dislocated disk that was documented in his medical records and his repeated requests to be given a bottom bunk pass, Defendants Pigos and Fasciana failed to give him a bottom bunk pass, resulting in him sustaining injuries when he fell from his top bunk. (Id. at 2-3.) The Court finds that Plaintiff may be able to state a claim based on the failure of Defendants Pigos and Fasciana to address his medical need for a bottom bunk. To succeed on such a claim, Plaintiff must establish that Defendants were deliberately indifferent to his serious medical needs. See Farmer, 511 U.S. at 835; Brown v. Deparlos, 492 F. App'x 211, 214 (3d Cir. 2012); Tindell, 2017 WL 3028598, at *3.

Liberally construing the complaint and taking the facts as true, Plaintiff alleges that he informed Defendants Pigos and Fasciana about his deteriorated dislocated disk as early as May 3, 2014, which was documented in his medical file. (Doc. No. 1 at 2-3.) Plaintiff also avers that he repeatedly requested a bottom bunk but that he remained on a top bunk. (Doc. No. 1 at 2-3.) Finally, Plaintiff alleges that he fell on February 18, 2016 while descending from the top bunk bed. (Id.) The Court concludes that these allegations are sufficient to state a claim against Defendants Pigos and Fasciana for screening purposes. See Tindell, 2017 WL 3028598, at *3. Accordingly, this claim survives screening.

### F. Leave to Amend

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of

---

indifferent to Plaintiff's alleged medical needs prior to either of them becoming aware of the same. Consequently, this claim will be dismissed as to Defendants Warner and Alama.

pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Id. The Court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). The Court will not permit Plaintiff leave to amend the claims that have been dismissed as the Court concludes that any amendment would be futile.

IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion for an extension of time in which to comply with the Court's May 18, 2018 Order (Doc. No. 9), grant Plaintiff's motion to reopen this action (Doc. No. 10), grant Plaintiff's motion for leave to proceed in forma pauperis (Doc. No. 11), and dismiss the complaint in part for failure to state a claim upon which relief may be granted. Service of the remaining Eighth Amendment claim on Defendants Pigos and Fasciana will be ordered. An appropriate Order follows.